IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TAYLOR GREER,

        Plaintiff,                       Case No.

v.                                             Judge
                                                Magistrate Judge
VALVOLINE , LLC d/b/a VALVOLINE
INSTANT OIL CHANGE
                                               JURY DEMAND
        Defendant.
_____/

**COMPLAINT**

Plaintiff, Ms. Taylor Greer, was hired by Valvoline Instant Oil Change ("Valvoline") as a technician. Valvoline quickly recognized Ms. Greer's talent and promoted her to Senior Technician. Valvoline then invited Ms. Greer participate in its management training program. Ms. Greer was promoted to Assistant Manager I and was on track to be promoted to Store Manager when she disclosed her disability and complained about violations of Valvoline's anti-harassment and anti-bullying policies. Immediately after her complaints, she was stripped of her management trainee responsibilities, her further training opportunities were cancelled, and she was forced to work as a subordinate to her harasser, who had been promoted. Nonetheless, Ms. Greer continued to persevere until an employee threatened to physically attack her. Ms. Greer suffered a severe anxiety attack and though she tried to continue working, because Valvoline refused to provide a workplace free from harassment and bullying, Ms. Greer was constructively discharged.

Accordingly, Ms. Greer files the instant Complaint for violations of state law, the ADA, Title VII of the Civil Rights Act of 1964, TDA and THRA.

1

## PARTIES

1. Plaintiff, Taylor Greer, is a citizen and resident of Wilson County, Tennessee, and a former employee of Defendant. Plaintiff worked at Defendant's Mt. Juliet, Wilson County, Tennessee location.

2. Defendant Valvoline, LLC is a Delaware licensed limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919. At all material times, Defendant has been an employer as defined by the ADA, Title VII, TDA and THRA.

3. At all material times Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111 and Title VII.

## JURISDICTION AND VENUE

4. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count I); Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count II), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e ("Title VII") (Count III), and The Tennessee Human Rights Act ("THRA") (Count IV) and Tennessee's common law assault and battery.

5. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

6. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*. and Title VII to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful

employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

7. Ms. Greer was employed by Valvoline from July 28, 2016 until March 2018.

8. Valvoline provides quick-lube automotive maintenance services.

9. Ms. Greer was hired as a technician. In this role she performed oil changes on customer vehicles.

10. In December 2016, Ms. Greer was promoted to Senior Technician.

11. Ms. Greer's store manager was Jen Haws. The area manager was Will Anderson.

12. Ms. Greer was told that Valvoline needed managers and that she had potential to succeed in this role. Both Ms. Haws and Mr. Anderson assured her she would be promoted to store manager.

13. To that end, Ms. Greer entered Valvoline's management training program and in May 2017 she was promoted to Assistant Manager.

14. Ms. Greer was transferred to the Pleasant Grove store because it was an underperforming store and she was brought in to help it succeed.

15. Around May 2017, Buddy Daniel, a technician at the Pleasant Grove store, began behaving inappropriately towards Ms. Greer, other employees, and customers. Specifically, Mr. Daniel attempted to kiss Ms. Greer several times, would attempt to rub his hands on her face, would call her "baby girl," and would text her late into the evening after the work day. Ms. Greer observed that Mr. Daniel was attempting to hold female customer's hands and making them uncomfortable.

16. Ms. Greer brought Mr. Daniel's behavior to the attention of Ms. Haws and Mr.

Anderson. Specifically, she reported that his behavior was unwanted and was upsetting to her.

17. On information and belief, no formal investigation was done into Mr. Daniel's inappropriate behavior and no discipline was issued.

18. Ms. Greer disclosed to Ms. Haws that she suffered from an anxiety disorder and post-traumatic stress disorder and that excessive interaction with customers and Mr. Daniel was exacerbating her condition. Ms. Greer requested an accommodation of not working in the customer service window, and instead focusing on her Assistant Manager and technician tasks. Valvoline did not accommodate her request.

19. As part of her management training, Ms. Greer was tasked with doing a thirty-day training under Store Manager John Craig in White House, Tennessee.

20. Technician Josh Humes began sexually harassing Ms. Greer. He would make suggestive comments to her, he would ask her for hugs, and would attempt to kiss her on the cheek.

21. Ms. Greer complained to Ms. Haws about Mr. Humes unwanted sexual harassment.

22. Mr. Craig asked Ms. Greer to make a statement about Mr. Humes' behavior and she complied.

23. Although she was slated to be training at White House for thirty days, after she made her complaint of harassment, and just seventeen days into her training, she was sent back to the Pleasant Grove store, where Ms. Humes was working.

24. Ms. Haws scheduled Ms. Greer to work with Mr. Humes at the Pleasant Grove store. Mr. Humes continued to send Ms. Greer messages via social media until she had to block his number.

25. Mr. Humes was transferred to the Lebanon Road store, however, on information and belief, he was never disciplined for any violations of Valvoline's sexual harassment policy.

26. In order to complete her management training, Ms. Greer needed to finish the 30-day store training, attend a three-day ITM training in Kentucky, and perform a market manager tour. After she complained about sexual harassment her thirty-day training was interrupted, and her scheduled 3-day ITM training was cancelled. She was never allowed to complete the management training.

27. Ms. Greer questioned Ms. Haws regarding when she could complete her management training and was told she was no longer on the promotion track.

28. Ms. Greer complained to Mr. Anderson that she was being retaliated against for making a sexual harassment complaint and Mr. Anderson assured her he would speak with Ms. Haws however no action was taken.

29. After Ms. Greer was not allowed to continue her management training, Valvoline brought Mr. Daniel back and put him on the promotion track. Mr. Daniel was allowed to complete all facets of his training and he became an Assistant Manager II.

30. Mr. Daniel was placed as Assistant Manager II in Ms. Greer's store. Mr. Daniel was in charge of the scheduling and would schedule Ms. Greer to work open-to-close several days in a row.

31. Ms. Greer continued to complain about the culture of sexual harassment in the workplace, including assistant managers flirting with subordinates, sending inappropriate text messages, and intoxicated phone calls. Ms. Haws told Ms. Greer that she could not do anything about it and Ms. Greer should just brush it off.

32. During this time, Ms. Greer's anxiety condition became aggravated due to the sexual harassment and retaliation at her workplace.

33. In late February/early March Ms. Greer had an altercation with a subordinate who

5

Case 3:19-cv-00141   Document 1   Filed 02/12/19   Page 5 of 11 PageID #: 5

became angry when directed to do her work and then cussed out Ms. Greer in front of other employees and customers.

34. Ms. Greer called Ms. Haws immediately and asked for assistance. Ms. Greer also contacted Human Resources. On the advice of Human Resources, Ms. Greer prepared a write up for the employee. Ms. Greer presented the write up to Ms. Haws but Ms. Haws refused to give it to the employee or discipline her in any way.

35. Ms. Greer, whose anxiety was exacerbated by the incident and lack of back up from her manager, took some sick time from work and during that time had her wisdom teeth removed.

36. During the time she was out, Ms. Haws called her and told her she could not be out that long and required her to return to work.

37. Ms. Greer returned to work and was threatened by an employee that she was going to "whoop her ass." Ms. Greer felt physically threatened and called Mr. Anderson. During the call, the employee was yelling and screaming in the background and Ms. Greer was very upset. Ms. Greer told Mr. Anderson that she felt unsafe. Ms. Greer called Human Resources and stated she was having an anxiety attack and needed to leave the premises. Human Resources directed her to stay at work.

38. Ms. Greer called her father and told him she was having a severe anxiety attack due to being threatened and he came to the Valvoline location and took her home.

39. That afternoon, Mr. Anderson left Ms. Greer a voice message that he had terminated the employee that day.

40. Ms. Greer had scheduled vacation days the following two days and was off work. During that time, Ms. Haws sent an email that she was short assistant managers because an assistant manager was quitting. Ms. Greer had not quit.

6

41. Ms. Greer worked all day the next day and came into work the following day. During that day, an employee was making fun of her for having an anxiety attack and repeatedly telling her that she should just quit. Ms. Greer felt threatened again and suffered another panic attack. She felt she was unable to continue working at the store due to the harassment and lack of support from management. Ms. Greer left the store and did not return.

42. When Ms. Greer was constructively discharged March 18, 2018. She did not have another job and remained unemployed until securing another position.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination and Retaliation

43. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

44. Plaintiff was a qualified individual with a disability.

45. Defendant discriminated against Plaintiff because of her disability in violation of the ADA.

46. Plaintiff informed Defendant of her disability and requested a reasonable accommodation. Defendant did not engage in an interactive process with Plaintiff to determine whether her disability could be accommodated.

47. Defendant discriminated against Plaintiff because of her disability in violation of the ADA by refusing offer an accommodation, refusing to engage in a good faith interactive conversation about her request for accommodation, and by constructively discharging her.

48. Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made a request for reasonable accommodation, including, but not limited to, not working in the customer service window when she was having flare ups.

49. Plaintiff engaged in protected activity when she requested accommodations under the ADAAA. Such actions by the Plaintiff are statutorily protected activities under the ADAAA.

50. Plaintiff was subjected to adverse employment actions because of her disability in violation of ADAAA.

51. Plaintiff was constructively discharged because of her disability.

52. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

53. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count II**
**Violation of TDA – Disability Discrimination and Retaliation**

54. Plaintiff restates and incorporates herein the foregoing paragraphs.

55. Defendant is an employer as defined in the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

56. Plaintiff was a qualified individual with a disability.

57. Defendant discriminated against Plaintiff because of her disability in violation of the TDA.

58. Plaintiff engaged in protected activity when she objected to and protested disability discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under the TDA.

59. Plaintiff was subjected to adverse employment actions in violation of the TDA.

60. As a direct and proximate result of Defendants' unlawful acts, Plaintiff suffered and continues to suffer professional and personal embarrassment, humiliation, inconvenience and lost earnings and benefits.

61. As a result, Plaintiff is entitled to recover her damages, including lost wages, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of Title VII – Sexual Harassment and Retaliation

62. Plaintiff restates and incorporates herein the foregoing paragraphs.

63. Plaintiff was subjected to a continuing and on-going campaign of sex harassment, assault and discrimination in Defendant's workplace because of her sex, female.

64. Plaintiff reported and/or protested incidents of harassment and assault by her supervisors and co-workers, the reports were either ignored or rebuffed. Defendant failed to remedy and/or prevent sex harassment in the workplace.

65. Defendant retaliated against Plaintiff by removing her from the promotion track, refusing to allow her to complete management training, transferring her back to location where the alleged harasser worked, forcing her to work alongside her alleged harassers, and forcing her to work with employees who threatened her with physical bodily harm in retaliation for the exercise of her rights to oppose sexual harassment taking place in the workplace. Ultimately Plaintiff was constructively discharged because her working conditions became so intolerable that she could no longer continue to work there.

66. Defendant is vicariously liable for the sexual harassment perpetrated by its managerial employees and is liable for failing to remedy sex harassment in the workplace.

67. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which she may be entitled.

## Count IV
## Violation of THRA – Sexual Harassment and Retaliation

68. Plaintiff restates and incorporates herein the allegations in the above paragraphs.

69. It is the public policy and law of the State of Tennessee that employees must be able to exercise their rights under state and federal law without fear of reprisal or penalty from an employer.

70. Contrary to the public policy and law of the State of Tennessee, as well as in violation of the THRA, Plaintiff was subject to a retaliatory hostile work environment and retaliated against for objecting to and complaining about sexual harassment and Defendant's failure to remedy sexual harassment taking place in the workplace.

71. This retaliation included removing her from the promotion track, refusing to allow her to complete management training, transferring her back to location where the alleged harasser worked, forcing her to work alongside her alleged harassers, forcing her to work with employees who threatened her with physical bodily hard in retaliation for the exercise of her rights to oppose sexual harassment taking place in the workplace. Ultimately Plaintiff was constructively discharged because her working conditions became so intolerable that she could no longer continue to work there.

72. As a result, Plaintiff has been damaged and is entitled to recover damages for suffering emotional pain, suffering, professional and personal embarrassment,

humiliation, loss of enjoyment of life, inconvenience and, at times, lost earnings and benefits.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages;

6. Attorneys' fees and expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Paige M. Lyle BPR # 032959
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
paige@collinshunter.com

*Attorneys for Plaintiff*